Confidential medical information has been redacted pursuant to Ninth Circuit Rule 27-13

Case No. 26-1104

United States Court of Appeals
for the Ninth Circuit

| | |
|---|---|
| In re:<br><br>ARMAN GABAEE,<br><br>            Petitioner. | D.C. Nos.: 2:18-cr-00331-GW-1<br>2:23-cv-10627-GW<br>[Central District of California]<br><br>APPLICATION FOR LEAVE TO FILE SECOND OR SUCCESSIVE MOTION PURSUANT TO 28 U.S.C. § 2255 AND MOTION TO FILE MATERIALS UNDER SEAL |

Petitioner, Arman Gabaee, respectfully applies, pursuant to 28 U.S.C. §§ 2244(b)(3) and 2255(h), for authorization to file a second or successive motion under 28 U.S.C. § 2255 in the United States District Court for the Central District of California.

This application is based on **newly discovered medical and neurological synthesis evidence** that did not exist and could not have existed at the time of Petitioner's prior § 2255 proceeding. The new evidence materially alters the medical understanding of Petitioner's brain function and executive capacity during the plea period and bears directly on whether Petitioner possessed the constitutionally required decisional capacity and mens rea.

1

If proven and viewed in light of the evidence as a whole, the newly discovered evidence would establish by clear and convincing evidence that no reasonable factfinder would have found Petitioner guilty of offenses requiring knowing and intentional conduct.

Petitioner therefore satisfies § 2255(h)(1).

Respectfully submitted,

By *Michael Devereux*

Michael Devereux
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
mike@wex.law

Case No. 26-1104

United States Court of Appeals
for the Ninth Circuit

In re:

ARMAN GABAEE,

        Petitioner.

D.C. Nos.: 2:18-cr-00331-GW-1
2:23-cv-10627-GW
[Central District of California]

APPLICATION FOR LEAVE TO FILE SECOND OR SUCCESSIVE MOTION PURSUANT TO 28 U.S.C. § 2255 AND MOTION TO FILE MATERIALS UNDER SEAL

**Memorandum in Support**

## I. INTRODUCTION AND PROCEDURAL HISTORY

    Petitioner Arman Gabaee respectfully applies, pursuant to 28 U.S.C. §§ 2244(b)(3) and 2255(h), for authorization to file a second or successive motion under 28 U.S.C. § 2255 in the United States District Court for the Central District of California.

    The operative medical synthesis — linking structural neurological deficits, benzodiazepine dependence, and executive dysfunction to the mens rea element —

3

was not reasonably discoverable by a pro se prisoner and only became apparent after counsel obtained and coordinated specialized review.

Petitioner previously filed a motion under § 2255, which was denied by the district court on December 3, 2024. A certificate of appealability was denied by this Court on June 17, 2025. Since Petitioner now seeks to file a new § 2255 motion, authorization from this Court is required.

The proposed successive § 2255 motion is not a relitigation of prior claims. It is based on newly discovered medical evidence and expert opinion that did not exist and could not have existed at the time of the prior § 2255 proceeding, and that bears directly on the constitutional validity of Petitioner's guilty plea, the reliability of the conviction, and Petitioner's ability to form the charged mens rea.

This application is based on newly discovered medical synthesis and expert neurological synthesis establishing that Petitioner suffered from structural brain vulnerability and executive-function impairment, compounded by long-term benzodiazepine dependence, that materially impaired his capacity for knowing and intentional conduct during the charged period.

Although certain medical records existed in raw form prior to the denial of Petitioner's first § 2255 motion, the operative neurological conclusions and their

4

legal significance were not reasonably discoverable by a pro se prisoner and did not mature into a medically supportable opinion until after longitudinal review and expert coordination by counsel.

If proven and viewed in light of the evidence as a whole, this newly discovered medical evidence establishes by clear and convincing evidence that no reasonable factfinder would have found Petitioner guilty of offenses requiring deliberate, intentional mens rea.

Because the application and accompanying materials contain extensive sensitive medical and neurological records, Petitioner also respectfully moves for leave to file this application and all accompanying materials under seal.

For purposes of this Court's gatekeeping review, Petitioner has submitted under seal the full proposed § 2255 motion that he seeks to file in the district court if authorization is granted, together with all supporting declarations and exhibits.

**II. BASIS FOR AUTHORIZATION UNDER 28 U.S.C. § 2255(h)**

Petitioner seeks authorization under § 2255(h)(1) based on newly discovered evidence.

The claims Petitioner now seeks to present rely centrally on the expert medical opinion of Dr. Sasan Yadegar, M.D., a board-certified neurosurgeon, who first evaluated and treated Mr. Gabaee only after Mr. Gabaee suffered ▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆ following the denial of his first § 2255 motion.

These post-conviction ▆▆▆ fundamentally altered the medical understanding of Mr. Gabaee's brain function, cognitive reserve, and executive functioning. As a result, the expert medical synthesis now presented could not have been developed earlier through diligence or otherwise. This constitutes newly discovered evidence within the meaning of § 2255(h)(1). See *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007).

## III. THE NEWLY DISCOVERED EVIDENCE AND NEUROLOGICAL SYNTHESIS

### A. Post-Conviction Neurological Injury

After the filing of Petitioner's initial § 2255 proceedings, Petitioner suffered ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ These events prompted comprehensive neurological evaluation, including diagnostic imaging and expert assessment.

The operative medical synthesis — linking structural neurological deficits, benzodiazepine dependence, and executive dysfunction to the mens rea element — was not reasonably discoverable by a pro se prisoner and only became apparent after counsel obtained and coordinated specialized review.

**B. Structural Brain Vulnerability and Executive Dysfunction**

Following denial of the prior § 2255 motion, continued neurological decline and specialized review led to expert analysis revealing structural brain compromise affecting executive-function capacity.

Subsequent expert review integrated:

- Neuroimaging findings,

- Documented cerebrovascular events,

- Long-term ▓▓▓▓▓▓▓▓▓▓ exposure,

- And longitudinal medical history.

The resulting medical opinion establishes that, during the charged period:

- Petitioner suffered executive-function deficits impairing rational deliberation;

7

- Long-term ▮▮▮▮▮▮▮ dependence materially degraded working memory, impulse control, and judgment;

- Structural brain vulnerability reduced cognitive reserve and stress tolerance;

- Apparent superficial coherence masked material decisional incapacity.

This synthesis—linking structural neurological impairment to the mens rea element—did not exist in usable form during the prior § 2255 proceeding.

## IV. DUE DILIGENCE AND PRO SE LIMITATIONS

Section 2255(h)(1) requires that the evidence could not have been discovered previously through due diligence.

Petitioner was proceeding pro se and incarcerated during the prior § 2255 litigation. While certain medical records existed in raw form, a reasonable pro se prisoner could not:

- Commission specialized neurological evaluation;

- Interpret neuroimaging to identify executive-function compromise;

- Integrate pharmacological effects of long-term ▮▮▮▮▮▮▮ exposure;

- Synthesize structural findings into a legally relevant mens rea analysis;

8

- Or appreciate the constitutional implications of executive dysfunction.

The operative claim is not based merely on pre-existing records. It is based on the medically supported synthesis of those records—an integration requiring specialized expertise and longitudinal analysis that only became apparent after counsel's involvement and continued neurological review.

Due diligence does not require a pro se prisoner to perform neurosurgical analysis or retain independent experts.

## V. RIPENESS: THE CLAIM WAS NOT PREVIOUSLY AVAILABLE IN MEANINGFUL FORM

Under principles articulated in Panetti v. Quarterman, a claim is not "second or successive" where the factual predicate was not previously ripe.

The constitutional claim advanced here—that structural neurological impairment negated Petitioner's capacity for knowing and intentional conduct—did not mature until:

1. Continued neurological decline and cerebrovascular events revealed structural vulnerability;

2. Diagnostic imaging was interpreted longitudinally;

3. Expert synthesis linked those findings to executive-function impairment; and

4. Counsel coordinated specialized review to contextualize the neurological findings.

Prior to that synthesis, the claim was medically and legally inchoate.

This is not a claim withheld.

It is a claim that had not yet meaningfully crystallized.

## VI. CLEAR AND CONVINCING SHOWING: NO REASONABLE FACTFINDER WOULD HAVE FOUND GUILT

The offenses of conviction required proof of knowing and intentional conduct.

The newly synthesized neurological evidence demonstrates that during the charged period:

- Petitioner's executive-function impairment materially limited rational deliberation;

- Benzodiazepine dependence impaired impulse control and working memory;

- Structural brain vulnerability undermined sustained intentional decision-making;

- His cognitive presentation masked significant decisional incapacity.

10

When viewed in light of the evidence as a whole—including the government's proof of intent—this neurological evidence negates the mens rea element.

Because intent is an essential element, its negation precludes guilt.

If proven, the evidence establishes by clear and convincing evidence that no reasonable factfinder would have concluded beyond a reasonable doubt that Petitioner possessed the requisite mens rea.

This satisfies § 2255(h)(1).

## VII. THIS CASE IS NOT A RELITIGATION OF PRIOR CLAIMS

This application does not reassert prior voluntariness arguments.

It does not merely challenge the plea colloquy.

It does not offer impeachment evidence.

It presents structural neurological evidence negating an essential element of the offense—evidence that was not reasonably discoverable by a pro se prisoner and that only matured into actionable form after expert synthesis.

## VIII. PRIMA FACIE SHOWING

At this stage, the Court determines only whether Petitioner has made a prima facie showing that the statutory requirements are met.

Petitioner has alleged:

- Newly discovered medical evidence;

- Inability to discover the operative claim earlier through due diligence;

- And that, if proven, the evidence would establish by clear and convincing evidence that no reasonable factfinder would have found guilt.

That is the precise statutory inquiry under § 2244(b)(3)(C).

## IX. MOTION TO FILE MATERIALS UNDER SEAL

Petitioner respectfully moves for leave to file this application, the proposed § 2255 motion, and all supporting declarations and exhibits under seal. The materials include detailed neurological records, prescription histories, and expert medical opinions. Public disclosure would result in unnecessary invasion of medical privacy. Compelling reasons support sealing. See *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006).

## X. CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court grant authorization under 28 U.S.C. § 2244(b)(3) to file a second or successive motion under 28 U.S.C. § 2255 in the district court, grant leave to file materials under seal, and grant such other and further relief as the Court deems just and proper.

Dated: February 25, 2026

Respectfully submitted,

By *Michael Devereux*

Michael Devereux
9440 Santa Monica Boulevard
Suite 301
Beverly Hills, California 90210
mike@wex.law