Michael S. Devereux  (SBN 225240)
9440 SANTA MONICA BOULEVARD, SUITE 301
BEVERLY HILLS, CALIFORNIA  90210
TELEPHONE: (424) 444-0883

Attorney for Defendant, ARMAN GABAEE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: CR 18-00331-GW |
|---|---|
| Plaintiff, | **MEMORANDUM IN SUPPORT OF ARMAN GABAEE'S PETITION TO VACATE GUILTY PLEA, CONVICTION, AND SENTENCE PURSUANT TO 28 U.S.C. § 2255; DECLARATIONS; EXHIBITS** |
| v. | |
| ARMAN GABAEE, | |
| Defendant. | |

Defendant Arman Gabaee, through counsel, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and sentence because his May 2, 2022 guilty plea was the product of a knowing, intelligent, and voluntary decision. As set forth below, the plea process was rendered unreliable by Petitioner's lifelong cognitive and executive-function limitations, long-term dependence on prescribed ▇▇▇▇▇▇ medications affecting judgment and decision-making, and the resulting impairment under acute plea-era stress. (Decl. of Arman Gabaee ("Gabaee Decl."); Decl. of Sasan Yadegar, M.D. ("Yadegar Decl.").) He seeks vacatur, an

evidentiary hearing, and leave to withdraw the plea pursuant to **28 U.S.C. § 2255**, for an order:

1. **Vacating Petitioner's guilty plea** on the ground that it was not entered knowingly, voluntarily, or competently, in violation of the Due Process Clause of the Fifth Amendment;

2. **Vacating the resulting judgment of conviction** entered on the basis of that plea;

3. **Alternatively**, should the Court determine that vacatur of the plea is not warranted, vacating Petitioner's sentence and ordering resentencing after a determination of Petitioner's capacity to meaningfully participate in sentencing proceedings;

4. **Ordering an evidentiary hearing** pursuant to 28 U.S.C. § 2255(b) to resolve disputed issues of material fact concerning Petitioner's cognitive disability, decisional capacity, mens rea, and the voluntariness and reliability of the plea and sentencing proceedings; and

5. **Granting such other and further relief as the Court deems just and proper**, including relief necessary to restore Petitioner to the position he occupied prior to entry of the guilty plea.

////

////

ii

MICHAEL DEVEREUX, ESQ.

1   This motion is based on this Notice of Motion, the accompanying

2
3   Memorandum of Points and Authorities, the declarations and exhibits submitted

4   herewith, the files and records of this case, and such argument and evidence as may

5   be presented at any evidentiary hearing ordered by the Court.

6
7   Dated: February 27, 2026

8                                   *Michael S. Devereux*
9                                   Michael S. Devereux
10                                  Attorney for Defendant
                                    ARMAN GABAEE

MICHAEL DEVEREUX, ESQ.

iii

MICHAEL DEVEREUX, ESQ.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.   INTRODUCTION.................................................................1

II.  PROCEDURAL POSTURE .................................................2

III. FACTUAL BACKGROUND ................................................2

    A. Lifelong Cognitive Disabilities and Prescription Dependence.................2

    These conditions were not episodic. They were baseline. ...........................3

    B. Incapacity at the Time of the Plea .................................3

    C. The Presentence Investigation Report Corroborates
        Contemporaneous Cognitive Impairment and Medication Use..........3

    **D. Newly Discovered Expert Evidence Resulting From Post-
        Conviction Neurological Injury** ........................................5

    **E. Newly Discovered Testimony Undercuts the Government's
        Quid-Pro-Quo Theory and Corroborates Medication-
        Induced Impairment of Intent** ........................................5

    F. The Same Cognitive Disability Undermined Mens Rea..........................7

    G. Overlap Between Plea Incapacity and Mens Rea Defect.........................8

IV. PETITIONER'S LIFELONG COMMUNITY HISTORY AND
    CHARACTER ARE LEGALLY RELEVANT TO COMPETENCY,
    MENS REA, AND MANIFEST INJUSTICE .............................8

    A. Mr. Gabaee's Professional History Undermines the Government's
        Mens Rea Theory ........................................9

    B. Mr. Gabaee's Charitable and Civic Record Further Contradicts
        Corrupt Intent..................................................10

    C. The Anomalous Nature of the Plea Supports Incapacity .......................11

    D. Health History Explains the Breakdown Between Character and
        Conduct ..................................................12

    E. Enforcing the Plea Would Result in Manifest Injustice .......................13

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICHAEL DEVEREUX, ESQ.

V.    ENFORCEMENT OF THE PLEA WOULD RESULT IN MANIFEST
      INJUSTICE ................................................................................ 13
      A. Manifest Injustice Exists Where the Plea Process Itself Was
            Unreliable .................................................................... 14
      B. The Plea Colloquy Failed to Satisfy the Court's Duty to Inquire Into .... 15
      Competency and Medication Effects ........................................ 15
      C. Additional Indicators of Unreliable Plea Participation ............ 18
      D. The Disconnect Between Mr. Gabaee's Character and the Plea Is
            Probative of Incapacity ................................................ 19
      E. Manifest Injustice Is Heightened Where the Same Impairment
            Negated Mens Rea .......................................................... 20
      F. The Absence of Prior Criminal Conduct Amplifies the Due-Process
            Violation ...................................................................... 20
      G. Finality Does Not Trump Due Process .................................... 21
      H. Summary: Why This Case Meets the Manifest Injustice Standard ...... 21
VI.   AN EVIDENTIARY HEARING IS REQUIRED ...................................... 22
      A. Legal Standard ................................................................ 22
      B. This Case Presents Core Factual Disputes That Cannot Be Resolved
            on Paper ...................................................................... 23
      C. The Plea Colloquy Does Not Eliminate the Need for a Hearing ...... 24
      D. Medical Capacity Evidence Necessitates Live Testimony ............ 25
      F. The Risk of Erroneous Conviction Outweighs Finality Concerns ...... 26
      G. Proffer of Evidence ........................................................ 26
VII.  CONCLUSION .................................................................... 27
VIII. PRAYER FOR RELIEF ............................................................ 28

v

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

4

*Bousley v. United States*, 523 U.S. 614 (1998). ................................................7, 19

*Boykin v. Alabama*, 395 U.S. 238, 242 (1969) .......................................13

*Brady v. United States*, 397 U.S. 742 (1970). ..............................8, 17, 18

*Dusky v. United States*, 362 U.S. 402 (1960); ...........................4, 12, 23

*Godinez v. Moran*, 509 U.S. 389 (1993). ...................................4, 12, 14

*McCarthy v. United States*, 394 U.S. 459 (1969)....................................20, 25

*Pate v. Robinson*, 383 U.S. 375, 385 (1966) ..........................................22

*Sivak v. Hardison*, 658 F.3d 898 (9th Cir. 2011) .....................11, 18, 22

*United States v. Brooks*, 750 F.3d 1090, 1097 (9th Cir. 2014) ...........................16

*United States v. Davis*, 428 F.3d 802 (9th Cir. 2005) ...........................13

*United States v. Deere* 718 F.3d 1125, 1138 (9th Cir. 2013),............................15

*United States v. Fuentes-Galvez* 969 F.3d 912, 916–17 (9th Cir. 2020) .............15

*United States v. Garza*, 751 F.3d 1130 (9th Cir. 2014)...................................20, 25

*United States v. Howard*, 381 F.3d 873 (9th Cir. 2004)................................19, 24

*United States v. Kyle*, 734 F.3d 956 (9th Cir. 2013). ......................................7

*United States v. Span*, 75 F.3d 1383 (9th Cir. 1996)...............................1

*United States v. Swisher*, 811 F.3d 299 (9th Cir. 2016).......................................22

5

6

7

8

9

10

**STATUTES**

11

12

28 U.S.C. § 2255..............................................................1, 7, 21, 26

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICHAEL DEVEREUX, ESQ.

MICHAEL DEVEREUX, ESQ.

# I.    INTRODUCTION

This case presents a fundamental due-process violation: a guilty plea accepted from a defendant who, because of a lifelong cognitive disability affecting executive functioning and judgment—compounded by medically documented prescription dependence—lacked both (1) the capacity to knowingly and voluntarily plead guilty and (2) the ability to form the mens rea required for the charged offenses.

Petitioner's impairments were not transient, tactical, or self-serving. They were chronic, clinically documented, and ongoing, and they materially affected his cognition, judgment, and executive functioning at every stage of the case—most critically at the time he entered the plea agreement.

The Constitution does not permit a conviction to stand where:

- the defendant could not rationally understand the proceedings, and

- the same impairments would have supplied a viable defense to intent at trial.

Yet that is precisely what occurred here.

The factual assertions regarding Petitioner's cognitive functioning, medication history, and plea-era decisional impairment are supported by sworn declarations and contemporaneous medical and prescription records submitted as Exhibits A through C. (Gabaee Decl.; Yadegar Decl.; Ex. A–D.)

1

## II.    PROCEDURAL POSTURE

Petitioner brings this motion under 28 U.S.C. § 2255 while serving a term of supervised release, which constitutes "custody" for purposes of § 2255. *United States v. Span*, 75 F.3d 1383, 1386 (9th Cir. 1996).

Petitioner seeks vacatur of his conviction and sentence, withdrawal of his guilty plea, and an evidentiary hearing.

## III.    FACTUAL BACKGROUND

### A. Lifelong Cognitive Disabilities and Prescription Dependence

From adolescence forward, Petitioner has suffered from severe, chronic cognitive disabilities affecting executive functioning, judgment, impulse control, and decision-making, treated through long-term psychotropic medication regimens that materially impair cognition and perception.

The medical records establish:

- longstanding clinically documented ██████████-██████ impairments;

- dependence on prescribed medications known to impair judgment and executive functioning;

- periods of ███████████████████████████ for informed consent; and

- clinical findings contemporaneous with the plea that Petitioner was not capable of informed decision-making.

2

These conditions were not episodic. They were baseline. (Gabaee Decl. ¶¶ 2–6, 9–11.)

## B. Incapacity at the Time of the Plea

At the time Petitioner entered his plea:

- he was actively dependent on prescribed medications;

- medical providers questioned his capacity to provide informed consent in non-legal contexts; and

- his cognitive functioning and executive judgment were demonstrably impaired. (Gabaee Decl. ¶¶ 20–23, 28–30; Yadegar Decl. )

If an individual is not capable of providing informed medical consent, federal due process does not permit the legal fiction that he was capable of waiving trial rights, confrontation, proof beyond a reasonable doubt, and liberty itself.

## C. The Presentence Investigation Report Corroborates Contemporaneous Cognitive Impairment and Medication Use

The Presentence Investigation Report (PSR) independently confirms that, at the time of sentencing, Mr. Gabaee was experiencing ongoing ███████ and ███████ impairments and was prescribed ███████ medications known to affect ███████████ functioning. Specifically, the PSR documents that Mr. Gabaee reported diagnoses including anxiety, depression,

MICHAEL DEVEREUX, ESQ.

3

fatigue, and attention-deficit disorder, as well as the use of prescribed medications including ███████████. PSR ¶ 82.

Critically, the PSR establishes that these conditions and medications were known to the system contemporaneously with the plea and sentencing, yet no inquiry was made into whether they affected Mr. Gabaee's decisional capacity, his ability to provide informed consent, his capacity to meaningfully participate in sentencing, or his ability to form the knowing and intentional mens rea required for the charged offenses.

The mere listing of diagnoses and medications in a presentence report does not satisfy due process where competency and capacity are constitutionally required. Due process demands a functional assessment, not a catalog of conditions. See *Dusky v. United States*, 362 U.S. 402 (1960); *Godinez v. Moran*, 509 U.S. 389 (1993).

The PSR's acknowledgment of cognitive conditions and prescription dependence—without any corresponding inquiry or evaluation—underscores the unreliability of the plea and sentencing proceedings rather than curing it.

Far from undermining Petitioner's claims, PSR ¶ 82 corroborates that Mr. Gabaee's ██████ disability affecting executive functioning and judgment, compounded by prescription medication dependence, was present, documented, and unexamined at the very moment constitutional safeguards were most critical.

4

MICHAEL DEVEREUX, ESQ.

MICHAEL DEVEREUX, ESQ.

### D. Newly Discovered Expert Evidence Resulting From Post-Conviction Neurological Injury

Although Petitioner's cognitive disability and prescription-related impairment existed at the time of the plea and sentencing, the expert neurosurgical evidence supporting those claims is newly discovered. After the conclusion of Petitioner's direct appeal and initial § 2255 proceedings, Mr. Gabaee suffered multiple strokes and related neurological injuries that required evaluation and treatment by Dr. Sasan Yadegar, M.D., a board-certified neurosurgeon.

Those post-conviction neurological events made possible, for the first time, a neurosurgical synthesis of Petitioner's ████████████ deficits, diminished █████ reserve, and vulnerability to medication effects. Dr. Yadegar's expert opinion did not exist and could not have existed at the time of the prior § 2255 motion, and it sheds new medical light on Petitioner's decisional capacity at the plea and sentencing stages. The constitutional violations alleged herein predate the strokes; the █████ explain why the expert evidence supporting those violations is newly available.

### E. Newly Discovered Testimony Undercuts the Government's Quid-Pro-Quo Theory and Corroborates Medication-Induced Impairment of Intent

Contrary to the fact pattern in the plea agreement, newly elicited testimony from former County official Thomas Shepos establishes that no bribery occurred between 2011 and 2015, undercutting the government's core quid-pro-quo narrative

5

during the critical period and reinforcing that Mr. Gabaee's perceived agreement conduct was not the product of deliberate, corrupt intent but of impaired judgment and heightened susceptibility to suggestion consistent with Dr. Yadegar's medical opinion regarding benzodiazepine-driven executive dysfunction and decisional incapacity.

During the December 22, 2025, deposition of Thomas Shepos, Shepos testified that Arman Gabaee did not give Thomas Shepos money, gifts, travel, or any thing of value in exchange for any official act.[1] Additionally, Shepos testified that there was no agreement—express or implied—between Arman Gabaee and Thomas Shepos tying any benefit to County leasing decisions.[2] Further, Thomas Shepos testified under oath that no quid pro quo existed involving Arman Gabaee.[3] Furthermore, Thomas Shepos testified that he did not possess unilateral authority to approve, execute, or bind the County to any lease or lease amendment.[4]  Moreover, independent County officials approved each lease and amendment involving Arman Gabaee. [5]

---

[1] See Ex D, Vol. 1, 290:21-27; 315:5-56; 323:69-325:78

[2] See Ex D, Shepos Depo. Vol. 1, 328:14-39.

[3] See Ex D, Shepos Depo. Vol. 1, 328:14-39.

[4] See Ex D, Shepos Depo. Vol. 2, 356:1-358:25.

[5] See Ex D, Shepos Depo. Vol. 1, 27:1-25; 28:1-5.

6

This evidence aligns with Dr. Yadegar's conclusion that long-term lorazepam use and executive-function vulnerabilities can produce superficial coherence while materially degrading capacity for rational deliberation, appreciation of consequences, and informed choice, rendering an individual unusually suggestible in high-stress legal contexts. In combination, Shepos's admission that no bribe occurred during the government's asserted timeframe and the medical showing of medication-induced cognitive impairment significantly strengthen the inference that Mr. Gabaee's plea-era decisions reflect impaired decisional capacity rather than knowing, voluntary acceptance of corrupt intent. (Yadegar Decl; Gabaee Decl. ¶¶ 24–30.)

### F. The Same Cognitive Disability Undermined Mens Rea

The charged offenses required knowing, intentional, and purposeful conduct. Petitioner's cognitive disability and medication-compounded executive-function impairments directly undermined:

- the ability to form specific intent;

- the capacity to appreciate consequences; and

- the ability to engage in deliberate, corrupt decision-making.

This was not merely mitigation. It was a substantive defense. (Yadegar Decl; Gabaee Decl. ¶¶ 31–35.)

MICHAEL DEVEREUX, ESQ.

1
2
3
4

Where mental illness or medication effects impair intent, the defendant may be actually innocent of the charged mens rea. See *United States v. Kyle*, 734 F.3d 956, 963 (9th Cir. 2013).

5
6
7
8

A plea that waives a viable mens rea defense—without the defendant's capacity to understand that defense—is constitutionally infirm. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998).

9

### G. Overlap Between Plea Incapacity and Mens Rea Defect

10
11

This case presents a critical overlap:

12
13
14

- the very conditions that invalidated the plea also undermined the intent element of the offense.

15
16

Convicting a defendant who could not form the requisite intent is a manifest injustice. *Bousley*, 523 U.S. at 623.

17
18
19

### IV.   PETITIONER'S LIFELONG COMMUNITY HISTORY AND CHARACTER ARE LEGALLY RELEVANT TO COMPETENCY, MENS REA, AND MANIFEST INJUSTICE

20
21
22
23
24

This Court's analysis does not occur in a vacuum. The Constitution requires examination of *the totality of the circumstances* surrounding a guilty plea, including the defendant's background, cognitive condition, and the plausibility of the charged intent. *Brady v. United States*, 397 U.S. 742, 749 (1970).

25
26
27
28

MICHAEL DEVEREUX, ESQ.

8

Here, Mr. Gabaee's lifelong history of lawful conduct, public-benefit work, and community leadership is not offered as mitigation alone. It is probative evidence that:

1. the charged mens rea was inconsistent with his established pattern of conduct;

2. his decision to plead guilty while cognitively impaired was anomalous and unreliable; and

3. enforcing the plea would result in manifest injustice.

## A. Mr. Gabaee's Professional History Undermines the Government's Mens Rea Theory

For decades, Mr. Gabaee built and operated reputable real-estate businesses across Southern California. His work involved identifying properties, overseeing construction, and negotiating complex commercial leases—often with public agencies—requiring transparency, regulatory compliance, and sustained interaction with government oversight.

His companies have:

- owned and managed over 100 properties;

- provided direct employment to approximately 50 individuals and indirect employment to more than 1,000; and

- maintained multiple major projects in active development.

9

Critically, Mr. Gabaee served as an authorized management agent and lessor for multiple County of Los Angeles agencies, including DPSS, DCFS, the District Attorney, CSSD, DPSS GAIN, and the Department of Mental Health. These leases frequently delivered below-market or low-end-of-market rates, ensured continuity of essential government services, consolidated programs, and expanded service capacity—often with significant State and Federal subvention minimizing local cost.

This history matters. A defendant whose professional life is defined by long-term, arms-length negotiation with public agencies, cost containment, and program continuity does not suddenly adopt a corrupt quid-pro-quo intent absent extraordinary circumstances. Where the government's theory hinges on "corrupt intent," the absence of any prior misconduct, combined with decades of lawful public-sector dealings, is powerful evidence that something else—namely cognitive impairment—was at work.

### B. Mr. Gabaee's Charitable and Civic Record Further Contradicts Corrupt Intent

Beyond his business activities, Mr. Gabaee has a sustained and documented record of community service and philanthropy.

Most notably, he personally financed and supervised critical renovations for the Union Rescue Mission, performing and overseeing extensive repair work over

10

an extended period without charging for labor, materials, or management, thereby materially expanding services to people experiencing homelessness.

He has also supported numerous charitable and civic organizations, including:

- City of Hope,

- Hadassah,

- the Magbit Foundation, and

- educational institutions throughout Los Angeles,

often donating anonymously. He has funded scholarships and community initiatives in healthcare, education, and social services.

These are not episodic acts performed after prosecution. They are part of a long-standing pattern of conduct inconsistent with the mental state required for the charged offenses.

### C. The Anomalous Nature of the Plea Supports Incapacity

Equally important is what did *not* exist before this case:

- no prior criminal record;

- no history of deceit, fraud, or abuse of public trust;

- no pattern of risk-taking or reckless behavior.

Against this backdrop, the decision to plead guilty—thereby jeopardizing his family, businesses, employees, and reputation—was radically inconsistent with his lifelong conduct.

Courts routinely recognize that when a defendant's plea decision is starkly out of character, particularly when coupled with documented mental-health impairment, it supports a finding that the plea was not the product of rational, voluntary choice. *See Sivak v. Hardison*, 658 F.3d 898, 918–19 (9th Cir. 2011).

### D. Health History Explains the Breakdown Between Character and Conduct

The disconnect between Mr. Gabaee's lifelong conduct and the plea he entered is explained by his documented cognitive disabilities and prescription dependence.

As set forth above, at the time of the plea:

- he suffered from chronic executive-function impairment;
- he was dependent on prescribed medications known to impair cognition and judgment; and
- medical providers questioned his capacity to provide informed consent in non-legal settings.

Federal due process does not permit a court to treat such a plea as reliable while ignoring contemporaneous medical evidence of decisional impairment. *Dusky v. United States*, 362 U.S. 402 (1960); *Godinez v. Moran*, 509 U.S. 389 (1993).

12

MICHAEL DEVEREUX, ESQ.

*E. Enforcing the Plea Would Result in Manifest Injustice*

Manifest injustice exists where a guilty plea is enforced despite evidence that:

- the defendant lacked competency,

- the plea was entered under cognitive impairment, and

- the underlying conduct is inconsistent with the charged mens rea.

Here, enforcing the plea would permanently brand a man with no prior criminal history—one who devoted decades to lawful enterprise, public-sector collaboration, and community service—based on a plea entered while mentally impaired and without the capacity to appreciate viable defenses.

That result offends due process.

## V.    ENFORCEMENT OF THE PLEA WOULD RESULT IN MANIFEST INJUSTICE

The Ninth Circuit defines "manifest injustice" not as mere regret or changed circumstances, but as a conviction resting on a plea that is **constitutionally unreliable**. *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005). Where a plea is entered by a defendant who lacked the capacity to make a rational and informed choice, enforcement of that plea violates due process and constitutes manifest injustice as a matter of law.

This case presents such circumstances.

13

MICHAEL DEVEREUX, ESQ.

1
2
3
4
5
6
7
8
9
10

**MICHAEL DEVEREUX, ESQ.**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### *A. Manifest Injustice Exists Where the Plea Process Itself Was Unreliable*

The Supreme Court has made clear that "a guilty plea is more than a confession; it is itself a conviction," and therefore demands heightened reliability. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

Here, the reliability of the plea is undermined by three converging facts:

1. Documented ███████████████████████████████ affecting cognition at the time of the plea;

2. Medical evidence contemporaneous with the plea showing impaired decisional capacity in non-legal contexts; and

3. A plea decision radically inconsistent with Petitioner's lifelong conduct, interests, and character, strongly suggesting impaired judgment rather than reasoned choice.  (Gabaee Decl. ¶¶ 20–30; Yadegar Decl.)

The unreliability of the sentencing proceeding is further confirmed by the Presentence Investigation Report itself. As noted above, the PSR documents that, at the time of sentencing, Mr. Gabaee was diagnosed with anxiety, depression, fatigue, and attention-deficit disorder, and was prescribed ███████ medications including ██████████—medications known to impair cognition, judgment, and executive functioning. PSR ¶ 82.

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICHAEL DEVEREUX, ESQ.

Despite this contemporaneous acknowledgment, no inquiry was made into whether these conditions and medications affected Mr. Gabaee's ability to understand the sentencing process, comprehend guideline calculations, meaningfully assist counsel, evaluate mitigation arguments, or make informed decisions regarding allocution. Sentencing is a critical stage requiring precisely these capacities. See *Godinez v. Moran*, 509 U.S. 389 (1993).

The fact that the PSR identified cognitive conditions and prescription dependence—but that the sentencing court conducted no functional assessment of capacity—underscores the constitutional defect. Due process requires more than awareness; it requires evaluation where capacity is implicated. The absence of such inquiry renders the sentencing proceeding unreliable and independently warrants relief.

Where these factors converge, enforcement of the plea constitutes manifest injustice. *See Sivak v. Hardison*, 658 F.3d 898, 918–19 (9th Cir. 2011).

**B. The Plea Colloquy Failed to Satisfy the Court's Duty to Inquire Into Competency and Medication Effects**

Although the Court conducted a Rule 11 colloquy at the plea hearing, the transcript reflects that the inquiry into Mr. Gabaee's competency and medication use was superficial and did not satisfy due process where cognitive impairment and prescribed psychoactive medications were implicated.

At the plea hearing, the Court asked Mr. Gabaee general, binary questions concerning whether he was under the influence of drugs or alcohol and whether he believed any condition prevented him from understanding the proceedings. (See

15

Plea Tr. at p.4, l.21- p.6, l.23.) Mr. Gabaee responded in the negative, and the Court proceeded to accept the plea without further inquiry. *Id.* The Court did not ask what medications Mr. Gabaee had been prescribed, whether he had taken them recently, the dosage or duration of use, or whether those medications affected his judgment, decision-making, or ability to weigh alternatives. Nor did the Court inquire into executive functioning, decisional capacity, or the ability to make a rational choice between pleading guilty and proceeding to trial.

Under Ninth Circuit law, this was insufficient. *In United States v. Fuentes-Galvez 969 F.3d 912, 916–17 (9th Cir. 2020),* the Ninth Circuit vacated a conviction where the plea court failed to meaningfully inquire into competency, mental health, and medication use despite evidence that such issues were present, holding that the absence of direct inquiry undermined the reliability of the plea. While the court here asked limited questions, the inquiry was functionally indistinguishable from the failure identified in Fuentes-Galvez: it relied on superficial coherence and self-assessment rather than probing decisional capacity where medication and cognitive impairment were implicated.

The constitutional deficiency is underscored by *United States v. Deere* 718 F.3d 1125, 1138 (9th Cir. 2013), which makes clear that competency to plead turns not on whether a defendant can answer questions, but on whether a mental disease, disorder, or defect "substantially affects the prisoner's capacity to appreciate his options and make a rational choice." Nothing in the plea transcript reflects any inquiry into Mr. Gabaee's capacity to appreciate his options, evaluate consequences, or make a rational choice in light of his prescribed medications and documented cognitive limitations.

The significance of this omission is reinforced by Ninth Circuit jurisprudence recognizing that psychotropic medication directly implicates cognitive capacity. See *United States v. Brooks,* 750 F.3d 1090, 1097 (9th Cir. 2014) (recognizing the

16

constitutional sensitivity of medication affecting mental functioning). Medical literature similarly establishes that prescribed medications—particularly benzodiazepines and other centrally acting drugs—may impair executive functioning and judgment even where a defendant appears outwardly coherent. These principles apply with full force to the plea context, where the waiver of fundamental rights demands heightened reliability.

The due-process failure did not end at the plea. At sentencing, the Court knew or should have known of Mr. Gabaee's prescribed medications and cognitive conditions because they were expressly documented in the Presentence Investigation Report. PSR ¶ 82. The PSR identified diagnoses including anxiety, depression, fatigue, and attention-deficit disorder, as well as the use of prescribed psychoactive medications such as Ativan and Adderall. Id. Despite this contemporaneous documentation, the Court made no inquiry into whether those medications affected Mr. Gabaee's ability to meaningfully participate in sentencing, assist counsel, evaluate guideline calculations, or make informed decisions regarding allocution.

The mere presence of this information in the PSR does not cure the constitutional defect. Due process requires a functional inquiry, not passive awareness. Where the plea court failed to meaningfully inquire despite available information through Pretrial Services, and the sentencing court failed to act despite explicit documentation in the PSR, the resulting proceedings cannot be deemed reliable. Taken together, the plea transcript and sentencing record establish that Mr. Gabaee's guilty plea was not knowing, intelligent, or voluntary, and that the conviction rests on a constitutionally infirm foundation.

MICHAEL DEVEREUX, ESQ.

### *C. Additional Indicators of Unreliable Plea Participation*

The plea transcript further demonstrates that Mr. Gabaee's participation was limited to rote, minimal responses, rather than meaningful engagement reflecting rational deliberation. Throughout the colloquy, Mr. Gabaee responded almost exclusively with "yes, Your Honor" or "no, Your Honor," did not ask a single question, and offered no spontaneous or explanatory responses. See Plea Tr. On at least one occasion, Mr. Gabaee appeared confused and gave an answer that required clarification. Plea Tr. at p.21, l.1.

Such limited verbal participation is not, standing alone, dispositive. But where cognitive impairment and prescribed psychoactive medications are implicated, the absence of any probing inquiry into decisional capacity renders reliance on monosyllabic answers constitutionally insufficient. As the Ninth Circuit has emphasized, a defendant may appear polite, compliant, and responsive while nonetheless lacking the capacity to appreciate options or make a rational choice. United States v. Deere, 718 F.3d 1125, 1138 (9th Cir. 2013).

The unreliability of the plea is compounded by the circumstances under which counsel discussed the plea agreement with Mr. Gabaee. As set forth in Petitioner's declaration, counsel reviewed the plea agreement with Mr. Gabaee only by telephone, not in person. Given Mr. Gabaee's documented cognitive disability affecting executive functioning and judgment, compounded by prescribed medication use, the absence of in-person review further undermined his ability to meaningfully understand, process, and evaluate the consequences of pleading guilty. Where a defendant's capacity is impaired, due process demands heightened—not reduced—assurance that the plea reflects a knowing and rational choice.

Taken together, Mr. Gabaee's minimal, formulaic responses at the plea hearing, his lack of questions or demonstrated comprehension, his momentary

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICHAEL DEVEREUX, ESQ.

confusion, and the limited manner in which the plea agreement was reviewed reinforce that the plea colloquy did not function as a reliable safeguard. Under Fuentes-Galvez, Deere, and Boykin, these circumstances required a more searching inquiry. The failure to conduct one renders the plea constitutionally infirm.

### D. The Disconnect Between Mr. Gabaee's Character and the Plea Is Probative of Incapacity

Manifest injustice analysis permits—and requires—the Court to consider whether the plea decision makes sense in light of the defendant's background. *Brady v. United States*, 397 U.S. 742, 749 (1970).

Mr. Gabaee's background is singularly inconsistent with the mental state the government attributes to him:

- decades of lawful business operations;

- repeated, transparent dealings with public agencies;

- delivery of below-market leases for essential government services;

- extensive charitable and civic engagement; and

- no prior criminal record of any kind.

A defendant with this history does not rationally choose to plead guilty—without trial, without testing mens rea, without litigating defenses—unless his ability to evaluate consequences is impaired.

19

The Ninth Circuit recognizes that such a **break from baseline behavior** is powerful evidence of incompetence or involuntariness. *United States v. Howard*, 381 F.3d 873, 879–80 (9th Cir. 2004).

### E. Manifest Injustice Is Heightened Where the Same Impairment Negated Mens Rea

This is not a case where the defendant merely failed to appreciate collateral consequences. The same cognitive conditions and medication effects that rendered Mr. Gabaee incapable of entering a knowing plea also **undermined the specific intent required for the offense**.

The Supreme Court has held that enforcing a guilty plea where the defendant may be "actually innocent" of the charged mens rea constitutes manifest injustice. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998).

Thus, the injustice here is compounded:

- the plea was unreliable **and**

- it waived a viable defense that the defendant lacked capacity to understand or assert.

### F. The Absence of Prior Criminal Conduct Amplifies the Due-Process Violation

While lack of criminal history alone does not establish manifest injustice, it becomes legally significant when combined with evidence of mental impairment. *See United States v. Garza*, 751 F.3d 1130, 1135 (9th Cir. 2014).

20

MICHAEL DEVEREUX, ESQ.

Here, the absence of any prior criminal conduct:

- undermines the government's theory of corrupt intent;

- reinforces that the plea decision was anomalous; and

- heightens the constitutional concern that the plea was the product of impairment rather than choice.

Enforcing such a plea would not serve finality; it would entrench error.

### G. Finality Does Not Trump Due Process

The government may argue that finality counsels against relief. But finality presupposes a valid conviction. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

This Court is not being asked to indulge remorse—it is being asked to correct a conviction entered without the minimum safeguards the Constitution requires.

### H. Summary: Why This Case Meets the Manifest Injustice Standard

Manifest injustice exists here because:

1. Mr. Gabaee suffered from documented cognitive impairments and prescription dependence at the time of the plea;

2. Those impairments affected his capacity to understand, reason, and choose;

21

MICHAEL DEVEREUX, ESQ.

3. The plea decision was starkly inconsistent with his lifelong conduct and interests;

4. The same impairments undermined the mens rea of the charged offense; and

5. Enforcing the plea would permanently affix criminal liability based on an unreliable adjudication.

Under Ninth Circuit and Supreme Court precedent, relief is not discretionary—it is required.

## VI.   AN EVIDENTIARY HEARING IS REQUIRED

### A. Legal Standard

A district court must grant an evidentiary hearing on a § 2255 motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Ninth Circuit has repeatedly emphasized that this is a low threshold. Where a petitioner presents "specific factual allegations that, if true, would entitle him to relief," the court may not resolve credibility disputes or weigh competing inferences on the written record alone. *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004); *United States v. Swisher*, 811 F.3d 299, 312 (9th Cir. 2016) (en banc).

MICHAEL DEVEREUX, ESQ.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MICHAEL DEVEREUX, ESQ.

In particular, evidentiary hearings are required where a petitioner raises non-conclusory allegations concerning:

- competency to plead,

- the voluntariness of a guilty plea,

- the effect of mental illness or medication on decision-making, or

- counsel's failure to investigate those issues.

**B. This Case Presents Core Factual Disputes That Cannot Be Resolved on Paper**

The government may argue that the plea colloquy alone resolves all issues. That argument is foreclosed by Supreme Court and Ninth Circuit precedent.

A "facially adequate" Rule 11 colloquy does not conclusively establish competency or voluntariness where there is credible, extrinsic evidence of cognitive impairment. *See Sivak v. Hardison*, 658 F.3d 898, 918–19 (9th Cir. 2011); *Pate v. Robinson*, 383 U.S. 375, 385 (1966).

Here, the Court is confronted with multiple factual disputes that require live testimony and credibility assessment:

1. Whether Mr. Gabaee was cognitively impaired at the time of the plea due to lifelong mental-health disabilities and prescription dependence;

23

2. Whether contemporaneous medical evidence demonstrates impaired decisional capacity, including the inability to provide informed consent in non-legal contexts;

3. Whether Mr. Gabaee could rationally consult with counsel and understand the proceedings, as required by *Dusky v. United States*, 362 U.S. 402 (1960);

4. Whether counsel knew or should have known of these impairments and failed to investigate or request a competency evaluation; and

5. Whether the same impairments undermined the mens rea of the charged offense, giving rise to a viable defense that was unknowingly waived.

The competing inferences regarding Petitioner's cognitive capacity and executive functioning cannot be resolved without live testimony from Petitioner and Dr. Yadegar. (Gabaee Decl. ¶¶ 20–30; Yadegar Decl.)

### C. The Plea Colloquy Does Not Eliminate the Need for a Hearing

Courts routinely caution against over-reliance on plea colloquies where mental illness or medication is at issue. Cognitive impairment often does not manifest as incoherent speech; instead, it appears as impaired judgment, diminished appreciation of consequences, and susceptibility to pressure.

MICHAEL DEVEREUX, ESQ.

1
2
3
4

As the Ninth Circuit has recognized, "a defendant may be competent to answer questions in court yet incompetent to make a reasoned decision to plead guilty." *Howard*, 381 F.3d at 879.

5
6
7
8
9
10
11

The anomalous nature of Mr. Gabaee's plea—given his lifelong lawful conduct, absence of criminal history, substantial community ties, and the catastrophic consequences of conviction—raises a substantial question whether the plea was the product of reasoned choice or impaired cognition. That question cannot be answered without hearing from:

12
13
14
15
16

- medical professionals,

- Mr. Gabaee himself,

- potentially trial counsel, and

- other witnesses familiar with his condition at the time.

17
18

### D. Medical Capacity Evidence Necessitates Live Testimony

19
20
21

This Court cannot assess decisional capacity without hearing from qualified medical witnesses.

22

Medical records alone establish that:

23
24

- Mr. Gabaee suffered from ███████████ conditions;

25
26

- he was dependent on prescribed medications known to impair cognition; and

27
28

25

MICHAEL DEVEREUX, ESQ.

- medical professionals questioned his capacity to provide informed consent.

But capacity is a functional determination, not a checkbox. It turns on how these conditions affected Mr. Gabaee's actual ability to understand, reason, and decide at the relevant time.

Federal courts consistently require evidentiary hearings where medical impairment is alleged to have affected plea capacity. *See Sivak*, 658 F.3d at 918–19; *United States v. Garza*, 751 F.3d 1130, 1135 (9th Cir. 2014).

## F. The Risk of Erroneous Conviction Outweighs Finality Concerns

The Supreme Court has made clear that where there is a substantial question regarding the validity of a guilty plea, accuracy must prevail over finality. *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

The cost of a hearing is modest. The cost of denying one—if the plea was entered by a mentally impaired defendant—is permanent constitutional error.

## G. Proffer of Evidence

At an evidentiary hearing, Petitioner would present:

1. Medical testimony regarding his psychiatric diagnoses, prescribed medications, and their cognitive effects;

2. Expert opinion on decisional capacity at the time of the plea;

3.  Lay testimony from individuals who observed his functioning during the relevant period;

4.  Testimony from prior counsel, if necessary, regarding investigation and decision-making; and

5.  Mr. Gabaee's testimony regarding his understanding, mental state, and decision-making at the time of the plea.

This proffer alone satisfies § 2255(b).

## VII.  CONCLUSION

Since Mr. Gabaee has raised specific, non-conclusory factual allegations that—if true—would entitle him to relief, and because those allegations establish a lifelong ███████████████████████████████████████████ that undermined plea capacity, mens rea, and sentencing participation, this Court must conduct an evidentiary hearing.

Anything less would risk enforcing a conviction obtained without the minimum guarantees of due process.

Thus, for the foregoing reasons, Petitioner Arman Gabaee respectfully requests that this Court grant his motion pursuant to 28 U.S.C. § 2255 and:

1.  **Vacate Petitioner's guilty plea** on the ground that it was not entered knowingly, voluntarily, or competently, in violation of the Due Process Clause of the Fifth Amendment;

27

MICHAEL DEVEREUX, ESQ.

2. **Vacate the resulting judgment of conviction** entered on the basis of that plea;

3. **Alternatively**, should the Court determine that vacatur of the plea is not warranted, vacate Petitioner's sentence and order resentencing after a determination of Petitioner's capacity to meaningfully participate in sentencing proceedings;

4. **Order an evidentiary hearing** pursuant to 28 U.S.C. § 2255(b) to resolve disputed issues of material fact concerning Petitioner's cognitive disability, decisional capacity, mens rea, and the voluntariness and reliability of the plea and sentencing proceedings; and

5. **Grant such other and further relief as the Court deems just and proper**, including any relief necessary to restore Petitioner to the position he occupied prior to entry of the guilty plea.

Anything less would risk enforcing a conviction obtained without the minimum guarantees of due process.

## VIII. PRAYER FOR RELIEF

For the reasons set forth above, Petitioner Arman Gabaee respectfully requests that this Court grant the following relief:

MICHAEL DEVEREUX, ESQ.

1. **Vacate Petitioner's guilty plea** on the ground that it was not entered knowingly, voluntarily, or competently, in violation of the Due Process Clause of the Fifth Amendment;

2. **Vacate the resulting judgment of conviction**, including all findings predicated on the invalid plea;

3. **Alternatively**, should the Court determine that vacatur of the plea is not warranted, vacate Petitioner's sentence and order resentencing after a determination of Petitioner's capacity to meaningfully participate in sentencing proceedings;

4. **Order an evidentiary hearing** pursuant to 28 U.S.C. § 2255(b) to resolve disputed issues of fact concerning Petitioner's cognitive disability, decisional capacity, mens rea, and the voluntariness and reliability of the plea and sentencing proceedings;

5. **Grant such other and further relief as the Court deems just and proper**, including any relief necessary to restore Petitioner to the position he occupied prior to entry of the guilty plea.

Dated: February 27, 2026



Michael S. Devereux
Attorney for Defendant
ARMAN GABAEE

29

MICHAEL DEVEREUX, ESQ.